# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

MICHIGAN DEPARTMENT OF
ENVIRONMENTAL QUALITY,

    Plaintiffs,                    No. [#]

v                                    HON.

FORD MOTOR COMPANY,        MAG.

    Defendants.

_____/

Polly A. Synk (P63473)
Brian J. Negele (P41846)
Attorneys for Plaintiff
Michigan Department of Attorney General
Environment, Natural Resources,
and Agriculture Division
6th Floor G. Mennen Williams Bldg.
525 West Ottawa Street
Lansing, MI 48933
517-373-7540

_____/

## CONSENT DECREE

# INDEX

I.  JURISDICTION ............................................................. 3

II.  PARTIES BOUND ....................................................... 4

III.  STATEMENT OF PURPOSE .................................... 5

IV.  DEFINITIONS............................................................. 6

V.  COMPLIANCE WITH STATE AND FEDERAL LAWS.......... 10

VI.  PERFORMANCE OF RESPONSE ACTIVITIES................... 11

VII.  ACCESS ................................................................. 38

VIII.  SAMPLING AND ANALYSIS ............................... 42

IX. EMERGENCY RESPONSE ...................................... 44

X.  FORCE MAJEURE ................................................... 45

XI.  RECORD RETENTION/ACCESS TO INFORMATION ........ 48

XII.  PROJECT MANAGERS AND
      COMMUNICATIONS/NOTICES.......................... 51

XIII.  SUBMISSIONS AND APPROVALS .................... 53

XIV.  REIMBURSEMENT OF COSTS .......................... 57

XV.  STIPULATED PENALTIES................................... 60

XVI.  DISPUTE RESOLUTION .................................... 64

XVII.  INDEMNIFICATION AND INSURANCE ......................... 69

XVIII.  COVENANTS NOT TO SUE BY THE STATE ................. 72

XIX.  RESERVATION OF RIGHTS BY THE STATE................... 74

XX.  COVENANT NOT TO SUE BY THE DEFENDANT............ 78

i

XXI.  CONTRIBUTION ..................................................................... 79

XXII.  MODIFICATIONS ................................................................. 80

XXIII.  TERMINATION OF CERTAIN PROVISIONS................. 80

XXIV.  SEPARATE DOCUMENTS................................................. 82

XXV.  FINAL JUDGMENT ........................................................... 82

ATTACHMENTS
Attachment A – Contaminants of Concern
Attachment B – Summary Report of Past Response Activity Costs
Attachment C – Map of Ford's Livonia Transmission Plant, located at 36200 Plymouth Road in Livonia, Michigan
Attachment D –  COC Screening Levels

The Plaintiff is the Michigan Department of Environmental Quality (MDEQ).

The Defendant is the Ford Motor Company (Ford), a Delaware Corporation, with its principal place of business located in Dearborn, Michigan.

MDEQ has filed a Complaint alleging that the release of hazardous substances, contaminants, and wastes at and from Ford's Livonia Transmission Plant, located at 36200 Plymouth Road in Livonia, Michigan has caused or contributed to a condition that presents or may present an imminent and substantial endangerment to health or the environment under Section 7002(a)(1)(B) of the Resource Conservation and Recovery Act (RCRA), 42 U.S.C. § 6972(a)(1)(B). MDEQ's Complaint further alleges claims under Part 201, Environmental Remediation, (Part 201) of the Michigan Natural Resources and Environmental Protection Act (NREPA), MCL 324.20101 et seq., and Part 31, Water Resources Protection, of NREPA, MCL 324.3101 et seq., for the same released hazardous substances, contaminants and wastes.  This Consent Decree (Decree) resolves all claims alleged by MDEQ in the Complaint.

1

This Decree requires the performance of interim response activities, a remedial investigation and remedial actions that will be undertaken at and in the vicinity of the Ford Livonia Transmission Plant to address the releases of hazardous substances, contaminants, and wastes described herein.  The Defendant agrees not to contest the authority or jurisdiction of the Court to enter this Decree or any terms or conditions set forth herein.

The entry of this Decree by the Defendant is for settlement purposes only and is neither an admission or denial of liability with respect to any issue dealt with in this Decree nor an admission or denial of any factual allegations or legal conclusions stated or implied herein.

The Parties agree that MDEQ's filing of the Complaint and entry into this Decree constitutes diligent prosecution by the State, under Section 7002(b)(2)(C)(i) of RCRA, 42 U.S.C. § 6972(b)(2)(C)(i), of all matters alleged in the Complaint and addressed by this Decree.

The Parties agree, and the Court by entering this Decree finds, that the response activities set forth herein are necessary to abate the release or threatened release of hazardous substances, contaminants

and wastes into the environment, to control future releases, and to protect public health, safety, and welfare, and the environment.

NOW, THEREFORE, before the taking of any testimony, and without this Decree constituting an admission of any of the allegations in the Complaint or as evidence of the same, and upon the consent of the Parties, by their attorneys, it is hereby ORDERED, ADJUDGED AND DECREED:

## I.  JURISDICTION

1.1    This Court has jurisdiction over the claims set forth in this Complaint under Section 7002(a) of RCRA, 42 U.S.C. § 6972(a); the federal Declaratory Judgment Act, 28 U.S.C. § 2201; and 28 U.S.C. § 1331 (federal question).  This Court also has supplemental jurisdiction over the Michigan NREPA claims set forth in the Complaint under 28 U.S.C. § 1367, because they are substantially related to the RCRA claims and form part of the same case or controversy.  This Court also has personal jurisdiction over the Defendant.  Defendant waives all objections and defenses that it may have with respect to jurisdiction of the Court or to venue in this Circuit.

1.2    The Court determines that the terms and conditions of this

Decree are fair, reasonable, adequately resolve the environmental

issues raised, in the public interest, and properly protect the interests of

the people of the State of Michigan.

1.3    The Court shall retain jurisdiction over the Parties and

subject matter of this action to enforce this Decree and to resolve

disputes arising under this Decree, including those that may be

necessary for its construction, execution, or implementation, subject to

Section XVI (Dispute Resolution).

## II.  PARTIES BOUND

2.1    This Decree shall apply to and be binding upon the

Defendant and the State and their successors and assigns.  Any change

in the ownership, corporate, or legal status of the Defendant, including,

but not limited to, any transfer of assets, or of real or personal property,

shall not in any way alter the Defendant's responsibilities under this

Decree.  To the extent that the Defendant is the owner of a part or all of

the Area of Concern (AOC), Defendant shall provide the MDEQ with

written notice prior to the transfer of ownership of part or all of the

AOC and shall provide a copy of this Decree to any subsequent owners

4

or successors prior to the transfer of any ownership rights.  The Defendant shall comply with the requirements of Section 20116 of the NREPA, MCL 324.20116, and the Part 201 Administrative Rules (Part 201 Rules).

2.2    Notwithstanding the terms of any contract that the Defendant may enter with respect to the performance of response activities pursuant to this Decree, the Defendant is responsible for compliance with the terms of this Decree and shall ensure that its contractors, subcontractors, laboratories, and consultants perform all response activities in conformance with the terms and conditions of this Decree.

2.3    The signatories to this Decree certify that they are authorized to execute this Decree and to legally bind the Parties they represent.

### III.  STATEMENT OF PURPOSE

The Parties have determined that entry of this Decree will:

(a)    Expedite the performance of response activities;

(b)    Ensure that Defendant will properly perform the response activities required by this Decree;

(c)     Require Defendant to develop and implement response activity plans as prescribed in this Decree to assess and abate any imminent and substantial endangerment of human health and the environment from the presence of Contaminants of Concern (COCs) at the Area of Concern as defined in this Consent Decree.

(d)     Provide for Defendant's reimbursement of the State for Past and Future Response Activity Costs as described in Section XIV (Reimbursement of Costs); and

(e)     Serve the public interest and minimize litigation.

## IV.  DEFINITIONS

4.1    "Area of Concern" or "AOC" means any area where one or more Contaminants of Concern released at or from the Property, has been released, deposited, disposed of, or otherwise comes to be located. The AOC may be larger than the area that constitutes a "facility," as defined in Section 20101(1)(s) of the NREPA, MCL 324.20101(1)(s).

4.2    "Contaminants of Concern" or "COCs" means the hazardous substances or other contaminants released at or from the Property, as listed on Attachment A, including, but not limited to, 1,1-Dichloroethylene, cis-1,2-Dichloroethylene, trans-1,2-Dichloroethylene,

6

1,4-Dioxane, Tetrachloroethylene, Trichloroethylene, and Vinyl Chloride, and their degradation products, and any hazardous substance or contaminant subsequently designated as a COC by agreement of the Parties.

4.3    "Decree" means this Consent Decree and any attachment hereto, including any future modifications, and any reports, plans, specifications and schedules required by the Consent Decree which, upon approval of the MDEQ, shall be incorporated into and become an enforceable part of this Consent Decree.

4.4    "Effective Date" means the date that the Court enters this Decree.

4.5    "Ford" means Ford Motor Company, a Delaware Corporation, with its principal place of business located in Dearborn, Michigan, and its successors.

4.6    "Future Response Activity Costs" means all costs incurred by the State that are not included in the attached Summary Report (Attachment B ), to develop, oversee, enforce, monitor, and document compliance with this Decree, and to perform response activities required by this Decree, including, but not limited to, costs incurred to:

7

monitor response activities at the AOC, observe and comment on field activities, review and comment on Submissions, collect and analyze samples, evaluate data, purchase equipment and supplies to perform monitoring activities, attend and participate in meetings, prepare and review cost reimbursement documentation, and perform response activities pursuant to Paragraph 6.13 (The MDEQ's Performance of Response Activities) and Section IX (Emergency Response).  Contractor costs are also considered Future Response Activity Costs.

4.7 "MDEQ" means the Michigan Department of Environmental Quality, its successor entities, and those authorized persons or entities acting on its behalf.

4.8 "Part 201" means Part 201, Environmental Remediation, of the Natural Resources and Environmental Protection Act, 1994 PA 451, as amended, MCL 324.20101 *et seq.*, and the Part 201 Administrative Rules.

4.9 "Part 201 Rules" means the administrative rules promulgated under Part 201.

4.10 "Party" means either the Defendant or the State.  "Parties" means the Defendant and the State.

8

4.11  "Past Response Activity Costs" means response activity costs that the State incurred and paid during the dates set forth in the attached Summary Report (Attachment B).

4.12  "Property" means Ford's Livonia Transmission Plant, located at 36200 Plymouth Road in Livonia, Michigan, as shown on the map provided in Attachment C.

4.13  "Response Activity Costs" means all costs incurred in taking or conducting a response activity, including enforcement costs.

4.14  "Response Activity Plan" means a plan for undertaking response activities. A Response Activity Plan may include one or more of the following:

> (a)    A plan to undertake interim response activities;
>
> (b)    A plan for evaluation activities;
>
> (c)    A Feasibility Study; or
>
> (d)    A Remedial Action Plan.

4.15  "RRD" means the Remediation and Redevelopment Division of the MDEQ and its successor entities.

4.16  "State" or "State of Michigan" means the Michigan Department of Attorney General (MDAG) and the MDEQ, and any authorized representatives acting on their behalf.

4.17  "Submissions" means all plans, reports, schedules, and other submissions that the Defendant is required to provide to the State or the MDEQ pursuant to this Decree.  "Submissions" does not include the notifications set forth in Section X (*Force Majeure*).

4.18  Unless otherwise stated herein, all other terms used in this Decree, which are defined in Part 3, Definitions, of the NREPA, MCL 324.301, Part 201 or the Part 201 Rules, shall have the same meaning in this Decree as in Parts 3 and 201 and the Part 201 Rules.  Unless otherwise specified in this Decree, "day" means a calendar day.

## V.  COMPLIANCE WITH STATE AND FEDERAL LAWS

5.1  All actions required to be taken pursuant to this Decree shall be undertaken in accordance with the requirements of all applicable or relevant and appropriate state and federal laws, rules, and regulations, including, but not limited to, Part 201, the Part 201 Rules, RCRA and its rules, and laws relating to occupational safety and

health.  Other State agencies may also be called upon to review the performance of response activities under this Decree.

5.2    This Decree does not relieve the Defendant's obligations to obtain and maintain compliance with permits.

## VI.  PERFORMANCE OF RESPONSE ACTIVITIES

### 6.1    Performance Objectives

Defendant shall perform all necessary response activities at the AOC to abate any imminent and substantial endangerment to human health and the environment caused by the release of COCs at and from the Property, and to comply with the requirements of Part 201, including the response activities required to meet the performance objectives outlined in this Decree.

(a)    To the extent that the Defendant is the owner or operator of part or all of the AOC, Defendant shall undertake all response activities necessary to achieve and maintain compliance with Section 20107a of the NREPA and to comply with all relevant permissible exposure limits "PELs" of the Occupational Safety and Health Administration.

(b)    Defendant shall perform interim response activities (IRA) to identify and address conditions that require response activities

necessary to mitigate any immediate public health risks.  An IRA Response Activity Plan is required in Paragraph 6.6 of this Decree, and shall include at a minimum (1) a CSM acceptable to MDEQ that provides a framework and record of the needed and completed response activities at the AOC, and (2) Vapor Intrusion Assessment and Mitigation actions to assess, and if necessary, mitigate any unacceptable public health risks at the AOC resulting from volatilization to indoor air of COCs from all environmental media.

(c)     Defendant shall conduct a remedial investigation (RI).  The performance objective of the RI is to assess AOC conditions in order to select an appropriate remedial action that adequately addresses those conditions by identifying the source or sources of any contamination and defining the nature and extent of contamination.

(d)     Defendant shall perform remedial actions as necessary based on the results of the RI.  The performance objectives of the remedial actions are to:

(i)     Obtain MDEQ approval for No Further Action (NFA) Reports addressing COCs at the AOC.

(ii)    All NFA Reports shall document that completed Remedial Actions satisfy and maintain compliance with the cleanup criteria as established under Section 20120a or Section 20120b of the NREPA, shall demonstrate that all unacceptable exposures to COCs as a result of the volatilization of those COCs into indoor air have been properly assessed and abated utilizing, at Defendant's option: (1) the screening levels provided in Attachment D; or (2) site-specific cleanup criteria that are determined appropriate based upon the conditions and the land use for that area of the AOC and approved by the MDEQ.  All NFA Reports must also document that completed Remedial Actions shall comply with all applicable requirements of Sections 20118, 20120d, and 20120e of the NREPA, and the Part 201 Rules.

(iii)   Assure the ongoing effectiveness and integrity of the remedial action specified in an MDEQ-approved remedial action plan.

(iv)    Allow for the continued use of the AOC consistent with local zoning pursuant to Section 20120a(6) of the NREPA.

(v)    Defendant shall perform source removal, maintain source control, or otherwise perform response activities necessary in order to prevent and mitigate any future offsite migration of COCs from

13

the Property and ensure compliance with relevant authorities including permissible exposure limits ("PELs") promulgated under authorities granted by the federal Occupational Safety and Health Act ("OSHA").

(e)     Defendant shall maintain its ongoing public outreach and information-sharing efforts to provide effective communication to the public and local units of government regarding the status and progress of response activities at the AOC.

## 6.2    Response Activity Plans

In accordance with this Decree, Defendant shall assure that all Response Activity Plans for conducting response activities are designed to achieve the performance objectives identified in Paragraph 6.1. Defendant shall develop each Response Activity Plan and perform the response activities contained in each MDEQ-approved Response Activity Plan in accordance with the requirements of this Decree and Part 201.  Upon MDEQ approval, each component of each Response Activity Plan and any approved modifications shall be deemed incorporated into this Decree and made an enforceable part of this Decree.  If there is a conflict between the requirements of this Decree

14

and any MDEQ-approved Response Activity Plan, the requirements of this Decree shall prevail.

### 6.3    Quality Assurance Project Plan (QAPP)

Within thirty (30) days of the Effective Date of this Decree, Defendant shall submit to the MDEQ for review and approval a QAPP, which describes the quality control, quality assurance, sampling protocol, and chain of custody procedures that will be used in carrying out the tasks required by this Decree.  The QAPP shall be developed in accordance with the United States Environmental Protection Agency's (EPA's) "EPA Requirements for Quality Assurance Project Plans," EPA QA/R-5, March 2001; "Guidance for Quality Assurance Project Plans," EPA QA/G-5, December 2002; and "Specifications and Guidelines for Quality Systems for Environmental Data Collection and Environmental Technology Programs," American National Standard ANSI/ASQC E4-1994.  Defendant shall utilize recommended sampling methods, analytical methods, and analytical detection levels specified in the "March 2016 Application of Target Detection Limits and Designated Analytical Methods Resource Materials."  Defendant shall utilize the MDEQ 2002 Sampling Strategies and Statistics Training Materials for

15

Part 201 Cleanup Criteria (S³TM) to determine the number of samples required to verify the cleanup and to determine sampling strategy. Defendant shall comply with the above documents that supersede or amend these documents, and may utilize other methods demonstrated by Defendant to be appropriate as approved by the MDEQ.

### 6.4    Health and Safety Plan (HASP)

Within thirty (30) days of the Effective Date of this Decree, Defendant shall submit to the MDEQ a HASP that is developed in accordance with the standards promulgated pursuant to the National Contingency Plan, 40 CFR 300.150; the Occupational Safety and Health Act of 1970, 29 CFR 1910.120; and the Michigan Occupational Safety and Health Act, 1974 PA 154, as amended, MCL 408.1001 *et seq.* Response activities performed by the Defendant pursuant to this Decree shall be in accordance with the HASP.  The HASP is not subject to the MDEQ's approval under Section XIII (Submissions and Approvals) of this Decree.

### 6.5   Documentation of Compliance with Section 20107a of the NREPA

To the extent that the Defendant owns or operates a part or all of the AOC, the Defendant shall maintain and upon the MDEQ's request, submit documentation to the MDEQ for review and approval that summarizes the actions the Defendant has taken or is taking to comply with Section 20107a of the NREPA and the Part 201 Rules.  Failure of the Defendant to comply with the requirements of this paragraph, Section 20107a of the NREPA, or the Part 201 Rules shall constitute a violation of this Decree and shall be subject to the provisions of Section XV (Stipulated Penalties) of this Decree.

### 6.6   Interim Response Activities (IRA)

Defendant shall submit to the MDEQ, for review and approval, a Response Activity Plan for IRA.  The IRA Response Activity Plan shall provide for the following:

(a)   An initial CSM as outlined below:

(i)   Defendant shall develop a CSM based upon the information and data collected to date which addresses the requirements detailed in ASTM E1689–95(2014) and the USEPA's Environmental Cleanup Best Management Practices: Effective Use of

17

the Project Life Cycle Conceptual Site Model (EPA 542-F-11-011, July 2011).  The initial CSM should be submitted to MDEQ within thirty (30) days of the Effective Date of this Decree.

(ii)    The CSM should describe the site environmental system, identifying the physical, chemical and biological processes that control the transport of contaminants from sources through environmental media to environmental receptors and include the development of area-specific CSMs.  Area-specific CSMs must be developed where the site or AOC has an area of contamination with differing chemicals of concern, releases, pathways, receptors and/or surface or subsurface conditions.  The CSM(s) must include all of the following components:

(A)    A pictorial model of the site conditions, including, but not limited to, the locations of contaminant sources, above ground and below ground structures and utilities, topographic features and surface hydrology, groundwater flow direction/rate, groundwater plume analysis in 3 dimensions, and related geology and hydrogeology information such as boring logs, field observations, and soil details.

(B)   A pathway network receptor diagram to support risk assessment for all reasonable and relevant exposure pathways.

(C)   A brief written description of the CSM that includes the following components: site description (current conditions and history), contaminant source, characterization, migration pathway descriptions, identification of data gaps.

(D)   Additional maps, tables and figures for support, if needed.

(E)   Performance data related to the onsite pump and treat system, including, but not limited to, extraction rate, total water volume recovered, nonaqueous-phase liquid volume recovered, and estimated monthly system down time.

(F)   Inclusion of all lab data sheets for COCs within the AOC, for purpose of quality assurance.  In addition, summary tables of all sampling shall be included and sorted by location and sampling period.

(G)   All CSM submissions, including tables, figures, and lab information, must be provided to the MDEQ in PDFA format.

(H)     The CSM should be revised as appropriate to include investigation data collected at the Property and AOC as directed by MDEQ.

(b)     A detailed Vapor Intrusion (VI) Assessment and Mitigation Plan, as outlined below.

(i)     Defendant shall develop and implement a Response Activity Plan to assess VI risks to identify any unacceptable human health risks from volatilization to indoor air of COCs within the AOC, including a schedule for the implementation of the assessment activities.  This Response Activity Plan is to be submitted within 30 days of MDEQ's written approval of the initial CSM required in paragraph 6.6(a) of this Decree.

(ii)     Defendant shall develop and implement a Response Activity Plan to mitigate the risks based on the data collected in the assessment required in Paragraph 6.6(b)(i) of this Consent Decree.  This Response Activity Plan is to be submitted within 30 days of the completion of the assessment required in Paragraph 6.6(b)(i) of this Consent Decree.  The Response Activity Plan for mitigation of VI risks shall require evaluation of the conditions at the AOC utilizing, at

Defendant's option: (1) the screening levels provided in Attachment D; or (2) site-specific cleanup criteria that are determined appropriate based upon the conditions and the land use for that area of the AOC and approved by the MDEQ. The Response Activity Plan for mitigation of VI risks shall include a schedule for the implementation of necessary mitigation.

      (c)    A description of how the proposed IRA will be consistent with the remedial action that is anticipated to be selected for the AOC in an MDEQ-approved remedial action plan, including:

      (i)    Implementation schedules for conducting the response activities and for submission of progress reports and an IRA report.

      (ii)    A plan for obtaining access to any properties not owned or controlled by Defendant that is needed to perform the required investigation and response activities contained in the IRA Response Activity Plan.

      (iii)   A description of the nature and amount of waste materials expected to be generated during the performance of response activities and the name and location of the facilities Defendant proposes

21

to use for the off-site transfer, storage, and treatment or disposal of those waste materials.

(iv)   A description of how any potential soil relocation will be in compliance with Section 20120c of the NREPA.

(d)   Within sixty (60) days of the Effective Date of this Decree and throughout the duration of this Decree, Defendant shall continue to evaluate the appropriateness of IRA based on the relevant factors set forth in Part 201 and undertake IRA if required by Part 201 or the applicable screening levels set forth in Attachment D or MDEQ-approved site specific criteria, as appropriate.  The evaluation and compliance with the IRA requirements shall be documented and provided to the MDEQ in the Progress Reports submitted pursuant to Paragraph 6.13.

(i)   After review of the documentation provided, if the MDEQ determines revised IRA are required for compliance with Part 201 or to further address unacceptable exposures to COCs, Defendant shall submit to the MDEQ, for review and approval, a Response Activity Plan for revised IRA within thirty (30) days (or such longer period as determined by MDEQ in its written notice) of the MDEQ's written

22

notice to Defendant of the need for a revised IRA Response Activity

Plan.  The revised IRA Response Activity Plan shall provide for the

following:

>   (A)     A detailed description of the specific work

tasks that will be conducted pursuant to the revised IRA Response

Activity Plan and a description of how these work tasks will meet the

performance objectives described in Paragraph 6.1(b).

>   (B)     A description of how the proposed IRA will

be consistent with the remedial action that is anticipated to be selected

for the AOC in an MDEQ-approved remedial action plan.

>   (C)     Implementation schedules for conducting

the response activities and for submission of progress reports and an

IRA report.

>   (D)     A plan for obtaining access to any properties

not owned or controlled by Defendant that is needed to perform the

response activities contained in the work plan.

>   (E)     A description of the nature and amount of

waste materials expected to be generated during the performance of

response activities and the name and location of the facilities Defendant

proposes to use for the off-site transfer, storage, and treatment or disposal of those waste materials.

(F)    A description of how soil relocation will be in compliance with Section 20120c of the NREPA.

(ii)    Within thirty (30) days of receiving the MDEQ's approval of the IRA or revised IRA Response Activity Plan, Defendant shall initiate the response activities contained in the plan; Defendant shall submit regular progress reports and an IRA report in accordance with the MDEQ-approved implementation schedule.

(iii)    Defendant shall immediately notify the MDEQ at any time during the assessment or mitigation activities if information indicates there may be an immediate risk to human health from volatilization of COCs into indoor air within the AOC based upon the screening levels provided in Table 2 of Attachment D and undertake IRA as determined appropriate in consultation with the MDEQ.

## 6.7    Remedial Investigation (RI)

(a)    Within thirty (30) days of MDEQ's written approval of the initial CSM described above, the Defendant shall submit to the MDEQ, for review and approval, a Response Activity Plan for

conducting an RI, which shall be of sufficient scope to provide the necessary information and data for the MDEQ to make a decision regarding approval of the remedial action plan. The RI Response Activity Plan shall provide for the following:

(i)     A detailed description of the specific work tasks that will be conducted pursuant to the Response Activity Plan and a description of how these work tasks will meet the performance objectives described in Paragraph 6.1(c), including:

(ii)    A description of the history and nature of operations at the AOC.

(iii)   Preliminary implementation schedules for conducting the response activities and for submission of progress reports and an RI Report.

(iv)    A plan for obtaining access to any properties not owned or controlled by the Defendant that is needed to perform the response activities contained in the work plan.

(v)     A plan for investigation of impact to the impacted storm sewer and any potentially impacted utility corridors, including any potential for product breakdown impact to downstream sediments,

25

determining any impact to surface waters (if any), and investigating the potential for preferential vapor intrusion pathways along utility corridors.

(vi)   A description of the nature and amount of waste materials expected to be generated during the performance of response activities and the name and location of the facilities the Defendant proposes to use for the offsite transfer, storage, and treatment or disposal of those waste materials.

(vii)   A description of how soil relocation will be in compliance with Section 20120c of the NREPA and the Part 201 Rules.

(viii)  A list of any onsite or offsite drinking water or irrigation wells within the impacted area, and a plan for obtaining permission from respective owners for the subsequent abandonment of wells, if determined appropriate.

(b)   Within thirty (30) days of receiving the MDEQ's approval of the RI work plan, the Defendant shall initiate performance of the response activities contained in the plan and submit progress reports and an RI Report in accordance with the approved implementation schedule.  The RI Report shall contain a refined and

26

comprehensive CSM to support the development of a remedial action plan.

### 6.8   Remedial Action Plan (RAP)

(a)   Within sixty (60) days of receiving MDEQ approval of the RI Reports as specified by the procedure set forth in Section XIII (Submissions and Approvals), the Defendant shall submit a RAP to the MDEQ for review and approval.  With written approval of MDEQ, the RAP may be phased to account for different timing requirements or to address specific geographic portions of the AOC.  The RAP shall provide for the following:

(i)   All requirements of Sections 20118, 20120a, 20120b, and 20120d of the NREPA and the Part 201 Rules.

(ii)   A detailed description of the specific work tasks to be conducted pursuant to the RAP, a description of how these work tasks will meet the performance objectives described in Paragraph 6.1(d) of this Decree, and a description and supporting documentation of how the results of the RI, and other response activities that have been performed at the AOC, support the selection of the remedial action contained in the RAP.

27

(iii)   Implementation schedules for conducting the

response activities identified in the RAP and for submission of progress

reports.

(iv)   If the RAP relies upon land and resource use

restrictions to assure the effectiveness and integrity of any containment

or exposure barrier, or other land use or resource use restrictions

necessary to assure the effectiveness and integrity of the remedy,

Defendant shall submit a draft Postclosure Plan to the MDEQ for

review and approval at least thirty (30) days prior to completion of the

remedial action or containment or barrier.  The draft Postclosure Plan

shall include documentation from property owners, easement holders,

or local units of government that any proposed restrictive covenant (RC)

for land or resource use restrictions or permanent markers can or will

be placed or enacted.  The proposed RC(s) shall comply with applicable

requirements of Part 201.  The form and content of the RC, containing

land and resource use restrictions, must be approved by the MDEQ.

Within twenty-one (21) days of the MDEQ's approval of the RC the

Defendant shall file for recording, or cause to be filed for recording, the

appropriate land and resource use restrictions with the Wayne County

28

Register of Deeds.  Within thirty (30) days of the recording with the

register of deeds, Defendant shall provide notice of the RC to the zoning

authority of the local unit of government within which the AOC is

located.

(v)    A plan for obtaining access to any properties not

owned or controlled by Defendant that is needed to perform the

response activities contained in the RAP.

(vi)    A description of the nature and amount of waste

materials expected to be generated during the performance of response

activities and the name and location of the facilities Defendant proposes

to use for the offsite transfer, storage, and treatment or disposal of

those waste materials.

(vii)   A description of how soil relocation will be in

compliance with Section 20120c of the NREPA.

(viii)  Identification of the conditions, including the

performance standards which may be used to define construction

completion (if applicable).

(ix)    A plan for maintaining source separation and

control to meet the performance objective in Paragraph 6.1(d)(iv), either

via continued operation and regular reporting data from the pump and treat system at the Property, or proposal of a new source control mechanism.

(b)     Within thirty (30) days of receiving the MDEQ's approval of the RAP, Defendant shall perform the RAP activities in accordance with the MDEQ-approved implementation schedule, as outlined in the RAP, and submit progress reports in accordance with the MDEQ-approved RAP.

### 6.9   Public Outreach Plan.

Defendant shall submit a Public Outreach Plan to MDEQ that details how the affected public can obtain up-to-date information about the COCs and the progress and status of the assessment, mitigation and response actions at the AOC.  At a minimum, the Public Outreach Plan shall include the following:

(a)     Defendant shall continue to maintain a public website for residents which contains updated offsite sample results for any soil, groundwater, soil gas, and indoor air monitoring determined to be necessary as part of the response activities.  The website shall be updated no later than thirty (30) days after sample results are received.

30

(b)     Defendant, or Defendant's technical consultant, shall be available for public meetings, as outlined in Paragraph 6.12.

### 6.10  No Further Action (NFA) Report

(a)     Upon completion of remedial actions that satisfy the requirements of Part 201 and demonstrate that all unacceptable exposures to COCs as a result of the volatilization of those COCs into indoor air have been properly assessed and abated utilizing, at Defendant's option: (1) the screening levels provided in Attachment D; or (2) site-specific cleanup criteria approved by the MDEQ; the Defendant shall submit an NFA Report.  The Defendant may submit one or more NFA Reports to address specific geographic portions of the AOC.  Any NFA Report submitted under this Decree shall be in accordance with Section 20114d of the NREPA, except that it shall address all COCs in all environmental media for all relevant exposure pathways within the specific geographic area addressed by the NFA Report.

(b)     If the completed remedial actions do not satisfy cleanup criteria for unrestricted residential use, the Defendant agrees to submit, as part of the NFA Report submittal, a Postclosure Plan that

31

complies with Section 20114c(2) of the NREPA to the MDEQ for review

and approval.  If the Postclosure Plan requires the placement of land

and resource use restrictions in an RC, Defendant shall provide a true

copy of the RC(s) and the Liber and page numbers to the MDEQ within

five (5) days of Defendant's receipt of a copy from the Register of Deeds.

      (c)     The Defendant agrees to submit, as part of the NFA

Report submittal, a Postclosure Agreement that complies with Section

20114d(4) of the NREPA to the MDEQ for review and approval if the

remedial action relies on any of the following:

         (i)     Engineering controls/barriers.

         (ii)    Operation and maintenance, and/or monitoring.

         (iii)   An alternate institutional control in lieu of an

RC.

      (d)     The NFA Report must indicate what obligation(s), if

any, in this Decree is (are) satisfied and terminated, or otherwise

affected, if the NFA Report submitted by the Defendant is approved by

the MDEQ.  MDEQ's approval of an NFA Report, including any

Postclosure Plan and Postclosure Agreement, as appropriate, shall

terminate the Defendant's obligations under Section VI (Performance of

Response Activities) for the completed remedial actions that satisfy the

requirements of Part 201, as documented in the NFA Report. The

Defendant's remaining obligations, if any, under a Postclosure

Agreement, shall be governed by that Postclosure Agreement and not by

the terms of this Decree. The approved NFA Report, including the

Postclosure Plan and Postclosure Agreement, as appropriate, are not

incorporated into this Decree.

### 6.11  Modification of a Response Activity Work Plan

(a)     If the MDEQ determines that a modification to a Response

Activity Plan is necessary to meet and maintain the applicable

performance objectives specified in Paragraph 6.1, to comply with

Part 201, or to meet any other requirement of this Decree, the MDEQ

may require that such modification be incorporated into a Response

Activity Plan previously approved by the MDEQ under this Decree. If

extensive modifications are necessary, the MDEQ may require the

Defendant to develop and submit a new Response Activity Plan. The

Defendant may request that the MDEQ consider a modification to a

Response Activity Plan by submitting such request for modification

along with the proposed change in the Response Activity Plan and the

justification for that change to the MDEQ for review and approval. Any

such request for modification by the Defendant must be forwarded to the MDEQ at least thirty (30) days prior to the date that the performance of any affected response activity is due.  Any Response Activity Plan modifications or any new work plans shall be developed in accordance with the applicable requirements of this section and shall be submitted to the MDEQ for review and approval in accordance with the procedures set forth in Section XIII (Submissions and Approvals).

(b)    Upon receipt of the MDEQ's approval, the Defendant shall perform the response activities specified in a modified Response Activity Plan or a new Response Activity Plan in accordance with the MDEQ-approved implementation schedules.

### 6.12  Public Notice and Public Meeting Requirements under Section 20120d of the NREPA

If the MDEQ determines there is significant public interest in the RI Report, proposed RAP, Response Activity Plans or NFA Report required by or proposed under this Decree, the MDEQ will make those reports or Response Activity Plans available for public comment.  When the MDEQ determines that the proposed plan or report is acceptable for public review, a public notice regarding the availability of those reports

34

or plans will be published, and those reports or plans shall be made available for review and comment for a period of not less than thirty (30) days.  The dates and length of the public comment period shall be established by the MDEQ.  If the MDEQ determines there is significant public interest or the MDEQ receives a request for a public meeting, the MDEQ will hold such public meeting in accordance with Section 20120d(1) and (2) of the NREPA.  Following the public review and comment period or a public meeting, the MDEQ may refer the report or plan back to the Defendant for revision to address public comments and the MDEQ's comments.  The MDEQ will prepare the final responsiveness summary document that explains the reasons for the selection or approval of a RAP in accordance with the provisions of Sections 20120d(4) and (5) of the NREPA.  Upon the MDEQ's request, the Defendant shall provide information to the MDEQ for the final responsiveness summary document or the Defendant shall prepare portions of the draft responsiveness summary document.

### 6.13  Progress Reports

(a)    The Defendant shall provide to the MDEQ Project Manager written progress reports regarding response activities and

other matters at the AOC related to the implementation of this Decree. These progress reports shall include the following:

(i)      A description of the activities that have been taken toward achieving compliance with this Decree during the specified reporting period.

(ii)      All results of sampling and tests and other data that relate to the response activities performed pursuant to this Decree received by the Defendant, its employees, or authorized representatives during the specified reporting period.

(iii)      The status of any access issues that have arisen, which affect or may affect the performance of response activities, and a description of how the Defendant proposes to resolve those issues and the schedule for resolving the issues.

(iv)      A description of the nature and amount of waste materials that were generated and the name and location of the facilities that were used for the off-site transfer, storage, and treatment or disposal of those waste materials, including copies of all waste manifests.

(v)   A description of data collection and other activities scheduled for the next reporting period.

(vi)   Any other relevant information regarding other activities or matters at the AOC that affect or may affect the implementation of the requirements of this Decree.

(b)   The first progress report shall be submitted to the MDEQ within one hundred twenty (120) days following the Effective Date of this Decree.  Thereafter, progress reports shall be submitted quarterly.  Pursuant to Paragraph 22.1, the MDEQ may approve modification of the schedule for the submission of progress reports.

## 6.14  The MDEQ's Performance of Response Activities

If the Defendant ceases to perform the response activities required by this Decree, is not performing response activities in accordance with this Decree, or is performing response activities in a manner that causes or may cause an endangerment to human health or the environment, the MDEQ may, at its option and upon providing thirty (30) days prior written notice to the Defendant, take over the performance of those response activities.  The MDEQ, however, is not required to provide thirty (30) days written notice prior to performing

response activities that the MDEQ determines are necessary pursuant to Section IX (Emergency Response) of this Decree.  If the MDEQ finds it necessary to take over the performance of response activities that the Defendant is obligated to perform under this Decree, the Defendant shall reimburse the State for its costs to perform these response activities, including any accrued interest.  Interest, at the rate specified in Section 20126a(3) of the NREPA, shall begin to accrue on the State's costs on the day the State begins to incur costs for those response activities.  Costs incurred by the State to perform response activities pursuant to this paragraph shall be considered to be "Future Response Activity Costs" and the Defendant shall provide reimbursement of these costs and any accrued interest to the State in accordance with Paragraphs 14.3, 14.5, and 14.6 of Section XIV (Reimbursement of Costs) of this Decree.

## VII.  ACCESS

7.1    Upon the Effective Date of this Decree, the Defendant shall allow the MDEQ and its authorized employees, agents, representatives, contractors, and consultants to enter the AOC and associated properties at all reasonable times to the extent access to the AOC and any

associated properties are owned, controlled by, or available to the

Defendant.  Upon presentation of proper credentials and upon making a

reasonable effort to contact the person in charge of the AOC, MDEQ

staff and its authorized employees, agents, representatives, contractors,

and consultants shall be allowed to enter the AOC and associated

properties for the purpose of conducting any activity to which access is

required for the implementation of this Decree or to otherwise fulfill

any responsibility under state or federal laws with respect to the AOC,

including, but not limited to the following:

      (a)    Monitoring response activities or any other activities

taking place pursuant to this Decree at the AOC;

      (b)    Verifying any data or information submitted to the

MDEQ;

      (c)    Assessing the need for, or planning, or conducting,

investigations relating to the AOC;

      (d)    Obtaining samples;

      (e)    Assessing the need for, or planning, or conducting,

response activities at or near the AOC;

      (f)    Assessing compliance with requirements for the

performance of monitoring, operation and maintenance, or other

measures necessary to assure the effectiveness and integrity of the remedial action;

(g)    Inspecting and copying non-privileged records, operating logs, contracts, or other documents;

(h)    Determining whether the AOC or other property is being used in a manner that is or may need to be prohibited or restricted pursuant to this Decree; and

(i)    Assuring the protection of public health, safety, and welfare, and the environment.

7.2    To the extent that the AOC, or any other property where the response activities are to be performed by the Defendant under this Decree, is owned or controlled by persons other than the Defendant, the Defendant shall use its best efforts to secure from such persons written access agreements or judicial orders providing access for the Parties and their authorized employees, agents, representatives, contractors, and consultants.  The Defendant shall provide the MDEQ with a copy of each written access agreement or judicial order secured pursuant to this section.  For purposes of this paragraph, "best efforts" includes, but is not limited to, providing reasonable consideration acceptable to the

owner or taking judicial action to secure such access.  If judicial action

is required to obtain access, the Defendant shall provide documentation

to the MDEQ that such judicial action has been filed in a court of

appropriate jurisdiction no later than sixty (60) days after the

Defendant's receipt of the MDEQ's approval of the Response Activity

Plan for which such access is needed.  If the Defendant has not been

able to obtain access within sixty (60) days after filing judicial action,

the Defendant shall promptly notify the MDEQ of the status of its

efforts to obtain access and shall describe how any delay in obtaining

access may affect the performance of response activities for which the

access is needed.  Any delay in obtaining access shall not be an excuse

for delaying the performance of response activities, unless the State

determines that the delay was caused by a *Force Majeure* event

pursuant to Section X (*Force Majeure*).  To the extent the Defendant is

subject to the requirements of Section 20114 of the NREPA, the

Defendant's failure to secure access or petition the court within

one (1) year of having reason to believe that access to another person's

property is necessary to comply with Section 20114 of the NREPA

41

subjects the Defendant to stipulated penalties pursuant to

Paragraph 15.3 of Section XV (Stipulated Penalties) of this Decree.

7.3   Any lease, purchase, contract, or other agreement entered

into by the Defendant that transfers to another person a right of control

over the AOC or a portion of the AOC shall contain a provision

preserving for the MDEQ or any other person undertaking the response

activities, and their authorized representatives, the access provided

under this section and Section XI (Record Retention/Access to

Information) of this Decree.

7.4   Any person granted access to the AOC pursuant to this

Decree shall comply with all applicable health and safety laws and

regulations.

## VIII.  SAMPLING AND ANALYSIS

8.1   All sampling and analysis conducted pursuant to this Decree

shall be in accordance with the QAPP specified in Paragraph 6.3 and

the MDEQ-approved Response Activity Plans.

8.2   The Defendant, or its consultants or subcontractors, shall

provide the MDEQ a ten (10)-day notice prior to any sampling activity

to be conducted pursuant to this Decree to allow the MDEQ Project

42

Manager, or his or her authorized representative, the opportunity to take split or duplicate samples or to observe the sampling procedures. In circumstances where a ten (10)-day notice is not possible, the Defendant, or its consultants or subcontractors, shall provide notice of the planned sampling activity as soon as possible to the MDEQ Project Manager and explain why earlier notification was not possible.  If the MDEQ Project Manager concurs with the explanation provided, Defendant may forego the ten (10)-day notification period for that particular sampling event.

8.3    The Defendant shall provide the MDEQ with the results of all environmental sampling, and other analytical data generated in the performance or monitoring of any requirement under this Decree and Part 201 of the NREPA or RCRA, or other relevant authorities.  These results shall be included in the progress reports set forth in Paragraph 6.13 of this Decree.

8.4    For the purpose of quality assurance monitoring, the Defendant shall assure that the MDEQ and its authorized representatives are allowed access to any laboratory used by the Defendant in implementing this Decree.

43

## IX.  EMERGENCY RESPONSE

9.1    If during the course of the Defendant performing response activities pursuant to this Decree, an act or the occurrence of an event by or on behalf of Defendant causes a release or threat of release of a hazardous substance at or from the AOC, or causes exacerbation of existing contamination at the AOC, and the release, threat of release, or exacerbation poses or threatens to pose an imminent and substantial endangerment to public health, safety, or welfare, or the environment, the Defendant shall immediately undertake all appropriate actions to prevent, abate, or minimize such release, threat of release, or exacerbation; and shall immediately notify the MDEQ Project Manager. In the event of the MDEQ Project Manager's unavailability, the Defendant shall notify the Pollution Emergency Alerting System (PEAS) at 1-800-292-4706.  In such an event, any actions taken by the Defendant shall be in accordance with all applicable health and safety laws and regulations and with the provisions of the HASP referenced in Paragraph 6.4 of this Decree.

9.2    Within ten (10) days of notifying the MDEQ of such an act or event, the Defendant shall submit a written report setting forth a

description of the act or event that occurred and the measures taken or to be taken to mitigate any release, threat of release, or exacerbation caused or threatened by the act or event and to prevent recurrence of such an act or event. Regardless of whether the Defendant notifies the MDEQ under this section, if an act or event causes a release, threat of release, or exacerbation, the MDEQ may: (a) require the Defendant to stop response activities at the AOC for such period of time as may be needed to prevent or abate any such release, threat of release, or exacerbation; (b) require the Defendant to undertake any actions that the MDEQ determines are necessary to prevent or abate any such release, threat of release, or exacerbation; or (c) undertake any actions that the MDEQ determines are necessary to prevent or abate such release, threat of release, or exacerbation. This section is not subject to the dispute resolution procedures set forth in Section XVI (Dispute Resolution) of this Decree.

## X.  FORCE MAJEURE

10.1  The Defendant shall perform the requirements of this Decree within the time limits established herein, unless performance is prevented or delayed by events that constitute a "*Force Majeure*."  Any

delay in the performance attributable to a *Force Majeure* shall not be deemed a violation of this Decree in accordance with this section.

10.2   For the purposes of this Decree, a "*Force Majeure*" event is defined as any event arising from causes beyond the control of and without the fault of the Defendant, of any person controlled by the Defendant, or of the Defendant's contractors, that delays or prevents the performance of any obligation under this Decree despite the Defendant's "best efforts to fulfill the obligation."  The requirement that the Defendant exercises "best efforts to fulfill the obligation" includes the Defendant using best efforts to anticipate any potential *Force Majeure* event and to address the effects of any potential *Force Majeure* event during and after the occurrence of the event, such that the Defendant minimizes any delays in the performance of any obligation under this Decree to the greatest extent possible.  *Force Majeure* includes an occurrence or nonoccurrence arising from causes beyond the control of and without the fault of the Defendant, such as an act of God, untimely review of permit applications or submission by the MDEQ or other applicable authority, and acts or omissions of third parties that could not have been avoided or overcome by diligence of the Defendant

46

and that delay the performance of an obligation under this Decree. *Force Majeure* does not include, among other things, unanticipated or increased costs, changed financial circumstances, or failure to obtain a permit or license as a result of actions or omissions of the Defendant.

10.3   The Defendant shall notify the MDEQ by telephone within seventy-two (72) hours of discovering any event that causes a delay or prevents performance with any provision of this Decree.  Verbal notice shall be followed by written notice within ten (10) calendar days and shall describe, in detail, the anticipated length of delay for each specific obligation that will be impacted by the delay, the cause or causes of delay, the measures taken by the Defendant to prevent or minimize the delay, and the timetable by which those measures shall be implemented.  The Defendant shall use its best efforts to avoid or minimize any such delay.

10.4   Failure of the Defendant to comply with the notice requirements of Paragraph 10.3, above, shall render this Section X void and of no force and effect as to the particular incident involved.  The MDEQ may, at its sole discretion and in appropriate circumstances, waive the notice requirements of Paragraph 10.3 of this Decree.

10.5   If the parties agree that the delay or anticipated delay was beyond the control of the Defendant, this may be so stipulated and the parties to this Decree may agree upon an appropriate modification of this Decree.  If the parties to this Decree are unable to reach such agreement, the dispute shall be resolved in accordance with Section XVI (Dispute Resolution) of this Decree.  The burden of proving that any delay was beyond the control of the Defendant, and that all the requirements of this section have been met by the Defendant, is on the Defendant.

10.6   An extension of one compliance date based upon a particular incident does not necessarily mean that the Defendant qualifies for an extension of a subsequent compliance date without providing proof regarding each incremental step or other requirement for which an extension is sought.

## XI.  RECORD RETENTION/ACCESS TO INFORMATION

11.1   The Defendant shall preserve and retain, for a period of ten (10) years after completion of operation and maintenance and long-term monitoring at the AOC, all records, sampling and test results, charts, and other documents relating to the release or threatened release of

hazardous substances, and the storage, generation, disposal, treatment, and handling of hazardous substances at the AOC; and any other records that are maintained or generated pursuant to any requirement of this Decree, including records that are maintained or generated by representatives, consultants, or contractors of the Defendant. The Defendant shall obtain the MDEQ's written permission prior to the destruction of any documents covered by this Paragraph. The Defendant's request shall be accompanied by a copy of this Decree and sent to the address listed in Section XII (Project Managers and Communications/Notices) or to such other address as may subsequently be designated in writing by the MDEQ.

11.2   Upon request, the Defendant shall provide to the MDEQ copies of all documents and information within its possession, or within the possession or control of its employees, contractors, agents, or representatives, relating to the performance of response activities or other requirements of this Decree, including, but not limited to, records regarding the collection and analysis of samples, chain of custody records, manifests, trucking logs, receipts, reports, sample traffic routing forms, or other correspondence, documents, or information

49

related to response activities.  Upon request, the Defendant shall also make available to the MDEQ, upon reasonable notice, the Defendant's employees, contractors, agents, or representatives with knowledge of relevant facts concerning the performance of response activities.

11.3  If the Defendant submits documents or information to the MDEQ that the Defendant believes are entitled to protection as provided for in Section 20117(10) of the NREPA, the Defendant may designate in that submission the documents or information which it believes are entitled to such protection.  If no such designation accompanies the information when it is submitted to the MDEQ, the MDEQ may provide the information to the public without further notice to the Defendant.  Information described in Section 20117(11)(a)-(h) of the NREPA shall not be claimed as confidential or privileged by the Defendant.  Information or data generated under this Decree shall not be subject to Part 148, Environmental Audit Privilege and Immunity, of the NREPA, MCL 324.14801 *et seq.*

## XII.  PROJECT MANAGERS AND
## COMMUNICATIONS/NOTICES

12.1  Each Party shall designate one or more Project Managers. Whenever notices, progress reports, information on the collection and analysis of samples, sampling data, Response Activity Plan submissions, approvals, or disapprovals, or other technical submissions are required to be forwarded by one Party to the other Party under this Decree, or whenever other communications between the Parties is needed, such communications shall be directed to the designated Project Manager at the address listed below.  Notices and submissions may be initially provided by electronic means but a hard copy must be concurrently sent.  If any Party changes its designated Project Manager, the name, address, and telephone number of the successor shall be provided to the other Party, in writing, as soon as practicable.

A.   As to the MDEQ:

Brandon Alger, Project Manager
Southeast Michigan District Office
Remediation and Redevelopment Division
Michigan Department of Environmental Quality
27700 Donald Court
Warren, MI 48092-2793
Phone:  586-753-3700
Fax:  586-751-4690
E-mail address:  algerb@michigan.gov

B.   As to the MDAG:

Assistant in Charge
Environment, Natural Resources, and Agriculture
Division
Michigan Department of Attorney General
G. Mennen Williams Building, 6th Floor
525 West Ottawa Street
Lansing, MI 48933
Phone:  517-373-7540
Fax:  517-373-1610

C.   As to the Defendant:

Todd M. Walton
Ford Motor Company - Environmental Quality Office
Manager, Global Site Assessment & Remediation
Fairlane Plaza North, 8th Floor
290 Town Center Drive
Dearborn, MI 48126
Phone: 313-845-1921
Fax:  313-248-5030
Email address: twalton@ford.com

12.2 The Defendant's Project Manager shall have primary responsibility for overseeing the performance of the response activities at the AOC and other requirements specified in this Decree for the Defendant.

12.3 The MDEQ may designate other authorized representatives, employees, contractors, and consultants to observe and monitor the progress of any activity undertaken pursuant to this Decree.

## XIII. SUBMISSIONS AND APPROVALS

13.1 All Submissions required by this Decree shall comply with all applicable laws and regulations and the requirements of this Decree and shall be delivered to the MDEQ in accordance with the schedule set forth in this Decree. All Submissions delivered to the MDEQ pursuant to this Decree shall include a reference to the Ford Motor Company Livonia Transmission Plant AOC and the Court Case No. All Submissions delivered to the MDEQ for approval shall also be marked "Draft" and shall include, in a prominent location in the document, the following disclaimer: *"Disclaimer: This document is a DRAFT document that has not received approval from the Michigan Department of Environmental Quality (MDEQ). This document was prepared*

53

*pursuant to a court Consent Decree.  The opinions, findings, and conclusions expressed are those of the authors and not those of the MDEQ."* Response Activity Plans required or submitted under this Decree are not subject to the provisions of Section 20114b of the NREPA, and therefore a review request form is not required, and MDEQ's review of Response Activity Plans is not subject to the time frames specified in Section 20114b.  In addition, MDEQ's review of any NFA Report submitted under this Decree is not subject to the time frames specified in Section 20114d of the NREPA.

13.2  After receipt of any Submission relating to response activities that is required to be submitted for approval pursuant to this Decree, the MDEQ District Supervisor will in writing:  (a) approve the Submission; (b) approve the Submission with modifications; or (c) disapprove the Submission and notify the Defendant of the deficiencies in the Submission.  Upon receipt of a notice of approval or approval with modifications from the MDEQ, the Defendant shall proceed to take the actions and perform the response activities required by the Submission, as approved or as modified, and shall submit a new

cover page and any modified pages of the Submission marked

"Approved."

13.3   Upon receipt of a notice of disapproval from the MDEQ

pursuant to Paragraph 13.2(c), the Defendant shall correct the

deficiencies and provide the revised Submission to the MDEQ for review

and approval within thirty (30) days, unless the notice of disapproval

specifies a longer time period for resubmission.  Unless otherwise stated

in the MDEQ's notice of disapproval, the Defendant shall proceed to

take the actions and perform the response activities not directly related

to the deficient portion of the Submission.  Any stipulated penalties

applicable to the delivery of the Submission shall accrue during the

thirty (30)-day period or other time period specified for the Defendant to

provide the revised Submission, but shall not be assessed unless the

resubmission is also disapproved and the MDEQ demands payment of

stipulated penalties pursuant to Section XV (Stipulated Penalties).  The

MDEQ will review the revised Submission in accordance with the

procedure set forth in Paragraph 13.2.  If the MDEQ disapproves a

revised Submission, the MDEQ will so advise the Defendant and, as set

forth above, stipulated penalties shall accrue from the date of the

MDEQ's disapproval of the original Submission and continue to accrue until the Defendant delivers an approvable Submission.

13.4  If any initial Submission contains significant deficiencies such that the Submission is not in the judgment of the MDEQ a good faith effort by the Defendant to deliver an acceptable Submission that complies with Part 201 and this Decree, the MDEQ will notify the Defendant of such and will deem the Defendant to be in violation of this Decree.  Stipulated penalties, as set forth in Section XV (Stipulated Penalties), shall begin to accrue on the day after the Submission was due and continue to accrue until an approvable Submission is provided to the MDEQ.

13.5  Upon approval by the MDEQ, any Submission and attachments to Submissions required by this Decree shall be considered part of this Decree and are enforceable pursuant to the terms of this Decree.  If there is a conflict between the requirements of this Decree and any Submission or an attachment to a Submission, the requirements of this Decree shall prevail.

13.6  An approval or approval with modifications of a Submission shall not be construed to mean that the MDEQ concurs with any of the

56

conclusions, methods, or statements in any Submission or warrants that the Submission comports with law.

13.7   Informal advice, guidance, suggestions, or comments by the MDEQ regarding any Submission provided by the Defendant shall not be construed as relieving the Defendant of its obligation to obtain any formal approval required under this Decree.

## XIV.   REIMBURSEMENT OF COSTS

14.1   Within thirty (30) days of the Effective Date of this Decree, the Defendant shall pay the MDEQ Forty-Five Thousand, Two Hundred Fifty-Three Dollars and Sixty-Two Cents ($45,253.62) to resolve all State claims for Past Response Activity Costs relating to matters covered in this Decree.   Payment shall be made pursuant to the provisions of Paragraph 14.5 of this Decree.

14.2   The Defendant shall also pay:  (a) response activity costs the State incurred during the dates set forth in the attached Summary Report (Attachment B), but that the State has not yet paid; and (b) response activity costs the State has incurred, but that are not accounted for in Attachment B, including staff costs in negotiating and preparing settlement documents with the Defendant, overseeing

response activities at the AOC prior to "the Effective Date of this Decree", and contractor costs. These costs shall be considered to be Future Response Activity Costs and shall be documented and included in an invoice for Future Response Activity Costs pursuant to Paragraph 14.3 of this Decree.

14.3  The Defendant shall reimburse the State for all Future Response Activity Costs incurred by the State. Following the Effective Date of this agreement, the MDEQ will periodically provide Defendant with an invoice for Future Response Activity Costs. An invoice will include a summary report (Summary Report) that identifies all Future Response Activity Costs, the nature of those costs, and the dates through which those costs were incurred by the State.  Except as provided by Section XVI (Dispute Resolution) of this Decree, Defendant shall reimburse the MDEQ for such costs within thirty (30) days of Defendant's receipt of an invoice from the MDEQ.

14.4  The Defendant shall have the right to request a full and complete accounting of all MDEQ invoices submitted hereunder, including time sheets, travel vouchers, contracts, invoices, and payment vouchers as may be available to the MDEQ. The MDEQ's provision of

these documents to the Defendant may result in the MDEQ incurring additional Future Response Activity Costs, which will be included in the invoice for payment of Future Response Activity Costs.

14.5  All payments made pursuant to this Decree shall be by check or Automated Clearing House (ACH) transfer, made payable to the "State of Michigan –Environmental Response Fund," and (if by check) shall be sent by first class mail to:

Accounting Services Condition
Cashier's Office for the DEQ
P.O. Box 30657
Lansing, MI 48909-8157

<u>Via courier</u>:
Accounting Services Division
Cashier's Office for DEQ
425 W. Ottawa Street
Lansing, MI 48933-2125

The Ford Motor Company Livonia Transmission Plant, the Court Case No. _____, and the RRD Account Number RRD50091 shall be designated on each check.  A copy of the transmittal letter and the check shall be provided simultaneously to the MDEQ Project Manager at the address listed in Paragraph 12.1A., and the Assistant in Charge at the address listed in Paragraph 12.1B.  Costs recovered pursuant to this section and payment of stipulated penalties

59

pursuant to Section XV (Stipulated Penalties) of this Decree shall be deposited into the Environmental Response Fund in accordance with the provisions of Section 20108(3) of the NREPA.

14.6   If the Defendant fails to make full payment to the MDEQ for Past Response Activity Costs or Future Response Activity Costs as specified in Paragraphs 14.1 and 14.3 of this Decree, interest, at the rate specified in Section 20126a(3) of the NREPA, shall begin to accrue on the unpaid balance on the day after payment was due until the date upon which the Defendant makes full payment of those costs and the accrued interest to the MDEQ.  In any challenge by the Defendant to an MDEQ demand for reimbursement of costs, the Defendant shall have the burden of establishing that the MDEQ did not lawfully incur those costs in accordance with Section 20126a(1)(a) of the NREPA.

## XV.  STIPULATED PENALTIES

15.1  The Defendant shall be liable for stipulated penalties in the amounts set forth in Paragraphs 15.2 and 15.3 of this Decree for failure to comply with the requirements of this Decree, unless excused under Section X (*Force Majeure*) of this Decree.  "Failure to Comply" by the Defendant shall include failure to complete Submissions and

60

notifications as required by this Decree and, failure to perform response activities in accordance with MDEQ-approved plans, this Decree, and all applicable requirements of law and this Decree within the specified implementation schedules established by or approved under this Decree.

15.2  The following stipulated penalties shall accrue per violation per day for any violation of Section VI (Performance of Response Activities) of this Decree:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $500.00 | 1st through 14th day |
| $1,000.00 | 15th through 30th day |
| $2,000.00 | 31st day and beyond |

15.3  Except as provided in Paragraph 15.2 and Section X (*Force Majeure*) and Section XVI (Dispute Resolution) of this Decree, if the Defendant fails or refuses to comply with any other term or condition of this Decree, the Defendant shall pay the MDEQ stipulated penalties of Five Hundred Dollars ($500.00) a day for each and every failure or refusal to comply.

15.4  All penalties shall begin to accrue on the day after performance of an activity was due or the day a violation occurs, and

61

shall continue to accrue through the final day of completion of performance of the activity or correction of the violation.  Nothing herein shall prevent the simultaneous accrual of separate penalties for separate violations of this Decree.

15.5   Except as provided in Section XVI (Dispute Resolution) of this Decree, the Defendant shall pay stipulated penalties owed to the State no later than thirty (30) days after the Defendant's receipt of a written demand from the State.  Payment shall be made in the manner set forth in Paragraph 14.5 of Section XIV (Reimbursement of Costs) of this Decree.  Interest, at the rate provided for in Section 20126a(3) of the NREPA, shall begin to accrue on the unpaid balance at the end of the thirty (30)-day period on the day after payment was due until the date upon which the Defendant makes full payment of those stipulated penalties and the accrued interest to the MDEQ.  Failure to pay the stipulated penalties within thirty (30) days after receipt of a written demand constitutes a further violation of the terms and conditions of this Decree.

15.6  The payment of stipulated penalties shall not alter in any way the Defendant's obligation to perform the response activities required by this Decree.

15.7  If the Defendant fails to pay stipulated penalties when due, the State may institute proceedings to collect the penalties, as well as any accrued interest.  However, the assessment of stipulated penalties is not the State's exclusive remedy if the Defendant violates this Decree. For any failure or refusal of the Defendant to comply with the requirements of this Decree, the State also reserves the right to pursue any other remedies to which it is entitled under this Decree or any applicable law including, but not limited to, seeking civil fines, injunctive relief, the specific performance of response activities, reimbursement of costs, exemplary damages pursuant to Section 20119(4) of the NREPA in the amount of three (3) times the costs incurred by the State as a result of the Defendant's violation of or failure to comply with this Decree, and sanctions for contempt of court.

15.8  Notwithstanding any other provision of this section, the State may waive, in its unreviewable discretion, any portion of

63

stipulated penalties and interest that has accrued pursuant to this Decree.

## XVI.  DISPUTE RESOLUTION

16.1  Unless otherwise expressly provided for in this Decree, the dispute resolution procedures of this section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Decree, except Section IX (Emergency Response) of this Decree, which are not disputable.  However, the procedures set forth in this section shall not apply to actions by the State to enforce any of the Defendant's obligations that have not been disputed in accordance with this section. Engagement of dispute resolution pursuant to this section shall not be cause for the Defendant to delay the performance of any response activity required under this Decree.

16.2  The State shall maintain an administrative record of any disputes initiated pursuant to this section.  The administrative record shall include the information the Defendant provides to the State under Paragraphs 16.3 through 16.5 of this Decree and any documents the MDEQ and the State rely on to make the decisions set forth in Paragraphs 16.3 through 16.5 of this Decree.

64

16.3   Except for undisputable matters identified in Paragraph 16.1 of this Decree, any dispute that arises under this Decree with respect to the MDEQ's disapproval, modification, or other decision concerning requirements of this Decree shall in the first instance be the subject of informal negotiations between the Project Manager representing the MDEQ and the Defendant.  A dispute shall be considered to have arisen on the date that a Party to this Decree receives a written Notice of Dispute from the other Party.  The Notice of Dispute shall state the issues in dispute; the relevant facts upon which the dispute is based; factual data, analysis, or opinion supporting the Party's position; and supporting documentation upon which the Party bases its position.  In the event, Defendant objects to any MDEQ notice of disapproval, modification, or decision concerning the requirements of this Decree that is subject to dispute under this Section, Defendant shall submit the Notice of Dispute within ten (10) days of receipt of the MDEQ's notice of disapproval, modification or decision.  The period of informal negotiations shall not exceed ten (10) days from the date a Party receives a Notice of Dispute, unless the time period for negotiations is modified by written agreement between the Parties.  If

the Parties do not reach an agreement within ten (10) days or within

the agreed-upon time period, the RRD District Supervisor will

thereafter provide the MDEQ's Statement of Position, in writing, to the

Defendant.  In the absence of initiation of formal dispute resolution by

the Defendant under Paragraph 16.4 of this Decree, the MDEQ's

position as set forth in the MDEQ's Statement of Position shall be

binding on the Parties.

16.4  If the Defendant and the MDEQ cannot informally resolve a

dispute under Paragraph 16.3 of this Decree, the Defendant may

initiate formal dispute resolution by submitting a written Request for

Review to the RRD Director, with a copy to the MDEQ Project Manager,

requesting a review of the disputed issues.  This Request for Review

must be submitted within ten (10) days of the Defendant's receipt of the

Statement of Position issued by the MDEQ pursuant to Paragraph 16.3

of this Decree.  The Request for Review shall state the issues in dispute;

the relevant facts upon which the dispute is based; factual data,

analysis, or opinion supporting the Party's position; and supporting

documentation upon which the Party bases its position.  Within

twenty (20) days of the RRD Director's receipt of the Defendant's

Request for Review, the RRD Director will provide the MDEQ's Statement of Decision, in writing, to the Defendant, which will include a statement of his/her understanding of the issues in dispute; the relevant facts upon which the dispute is based; factual data, analysis, or opinion supporting his/her position; and supporting documentation he/she relied upon in making the decision. The time period for the RRD Director's review of the Request for Review may be extended by written agreement between the Parties. In the absence of initiation of procedures set forth in Paragraph 16.5 of this Decree by the Defendant, the MDEQ's Statement of Decision shall be binding on the Parties.

16.5  The MDEQ's Statement of Decision pursuant to Paragraph 16.4, shall control unless, within twenty (20) day after Defendant's receipt of the MDEQ's Statement of Decision, Defendant files with this Court a motion for resolution of the dispute, which sets forth the matter in dispute, the efforts made by the Parties to resolve it, the relief requested, and the schedule, if any, within which the dispute must be resolved to insure orderly implementation of this Decree. Within thirty (30) days of Defendant's filing of a motion asking the Court to resolve a

dispute, Plaintiff will file with the Court the administrative record that is maintained pursuant to Paragraph 16.2 of this Decree.

16.6   Any judicial review of the MDEQ's Statement of Decision shall be limited to the administrative record.  In proceedings on any dispute relating to the selection, extent, or adequacy of any aspect of the response activities that are subject of this Decree, the Defendant shall have the burden of demonstrating on the administrative record that the position of the MDEQ is arbitrary and capricious or otherwise not in accordance with law.  In proceedings on any dispute, the Defendant shall bear the burden of persuasion on factual issues under the applicable standards of review.  Nothing herein shall prevent Plaintiffs from arguing that the Court should apply the arbitrary and capricious standard of review to any dispute under this Decree.

16.7   Notwithstanding the invocation of a dispute resolution proceeding, stipulated penalties shall accrue from the first day of the Defendant's failure or refusal to comply with any term or condition of this Decree, but payment shall be stayed pending resolution of the dispute.  In the event, and to the extent that the Defendant does not prevail on the disputed matters, the MDEQ may demand payment of

stipulated penalties and the Defendant shall pay stipulated penalties as set forth in Paragraph 15.5 of Section XV (Stipulated Penalties) of this Decree.  The Defendant shall not be assessed stipulated penalties for disputes that are resolved in their favor.

16.8   Notwithstanding the provisions of this section and in accordance with Section XIV (Reimbursement of Costs) and Section XV (Stipulated Penalties) of this Decree, the Defendant shall pay to the MDEQ that portion of a demand for reimbursement of costs or for payment of stipulated penalties that is not the subject of an ongoing dispute resolution proceeding.

## XVII.  INDEMNIFICATION AND INSURANCE

17.1   The State of Michigan does not assume any liability by entering into this Decree.  This Decree shall not be construed to be an indemnity by the State for the benefit of the Defendant or any other person.

17.2   The Defendant shall indemnify and hold harmless the State of Michigan and its departments, agencies, officials, agents, employees, contractors, and representatives for any claims or causes of action that arise from, or on account of, acts or omissions of the Defendant, its

69

officers, employees, agents, or any other person acting on its behalf or under its control, in performing the activities required by this Decree.

17.3  The Defendant shall indemnify and hold harmless the State of Michigan and its departments, agencies, officials, agents, employees, contractors, and representatives for all claims or causes of action for damages or reimbursement from the State that arise from, or on account of, any contract, agreement, or arrangement between the Defendant and any person for the performance of response activities at the AOC, including any claims on account of construction delays.

17.4  The State shall provide the Defendant notice of any claim for which the State intends to seek indemnification pursuant to Paragraphs 17.2 or 17.3 of this Decree.

17.5  Neither the State of Michigan nor any of its departments, agencies, officials, agents, employees, contractors, or representatives shall be held out as a party to any contract that is entered into by or on behalf of the Defendant for the performance of activities required by this Decree.  Neither the Defendant nor any contractor shall be considered an agent of the State.

17.6  The Defendant waives all claims or causes of action against the State of Michigan and its departments, agencies, officials, agents, employees, contractors, and representatives for damages, reimbursement, or set-off of any payments made or to be made to the State that arise from, or on account of, any contract, agreement, or arrangement between the Defendant and any other person for the performance of response activities at the AOC, including any claims on account of construction delays.

17.7  Prior to commencing any response activities pursuant to this Decree and for the duration of this Decree, the Defendant shall secure and maintain comprehensive general liability insurance with limits of One Million Dollars ($1,000,000.00), combined single limit, which names the MDEQ, the MDAG and the State of Michigan as additional insured parties.  If the Defendant demonstrates by evidence satisfactory to the MDEQ that any contractor or subcontractor maintains insurance equivalent to that described above, then with respect to that contractor or subcontractor, the Defendant needs to provide only that portion, if any, of the insurance described above that is not maintained by the contractor or subcontractor.  Regardless of the insurance method used

by the Defendant, and prior to commencement of response activities

pursuant to this Decree, the Defendant shall provide the MDEQ Project

Manager and the MDAG with certificates evidencing said insurance

and the MDEQ, the MDAG, and the State of Michigan's status as

additional insured parties.  Such certificates shall specify the Ford

Motor Company Livonia Transmission Plant, the Court Case No.

_____ and the Remediation and Redevelopment Division.

## XVIII.  COVENANTS NOT TO SUE BY THE STATE

18.1  In consideration of the actions that will be performed and

the payments that will be made by the Defendant under the terms of

this Decree, and except as specifically provided for in this section and

Section XIX (Reservation of Rights by the State) of this Decree, the

State of Michigan hereby covenants not to sue or to take further

administrative action against the Defendant for:

(a)    Performance of response activities related to the

releases of COCs and hazardous substances at and from the AOC.

(b)    Recovery of Past Response Activity Costs associated

with the AOC that the Defendant has paid as set forth in

72

Paragraphs 14.1 and 14.6 of Section XIV (Reimbursement of Costs) of this Decree.

      (c)    Recovery of Future Response Activity Costs associated with the AOC that the Defendant has paid as set forth in Paragraphs 14.2, 14.3, and 14.6 of Section XIV (Reimbursement of Costs) of this Decree.

      18.2  The covenants not to sue shall take effect under this Decree as follows:

      (a)    With respect to Defendant's liability for response activities performed related to releases of COCs at the AOC, the covenant not to sue shall take effect upon MDEQ approval of an NFA Report, for the response activities covered by such NFA Report, submitted pursuant to Section VI (Performance of Response Activities) of this Decree.

      (b)    With respect to Defendant's liability for Past Response Activity Costs and Future Response Activity Costs incurred and paid by the State, the covenants not to sue shall take effect upon the MDEQ's receipt of payments for those costs, including any applicable interest that has accrued pursuant to Paragraph 14.6 of this Decree.

73

18.3  The covenants not to sue extend only to the Defendant and do not extend to any other person.

## XIX.  RESERVATION OF RIGHTS BY THE STATE

19.1  The covenants not to sue apply only to those matters specified in Paragraph 18.1 of Section XVIII (Covenants Not to Sue by the State) of this Decree.  The State expressly reserves, and this Decree is without prejudice to, all rights to take administrative action or to file a new action pursuant to any applicable authority against the Defendant with respect to the following:

(a)  The performance of corrective action or response activities that are required to comply with RCRA or Part 201 and to achieve and maintain the performance objectives specified in Paragraph 6.1 of Section VI (Performance of Response Activities) of this Decree.

(b)  Response activity costs that the Defendant has not paid.

(c)  The past, present, or future treatment, handling, disposal, release, or threat of release of hazardous substances that occur outside of the AOC and that are not attributable to the AOC.

74

(d)     The past, present, or future treatment, handling,

disposal, release, or threat of release of hazardous substances taken

from the AOC.

(e)     Damages for injury to, destruction of, or loss of natural

resources, and the costs for any natural resource damage assessment.

(f)     Criminal acts.

(g)     Any matters for which the State is owed

indemnification under Section XVII (Indemnification and Insurance) of

this Decree.

(h)     The release or threatened release of hazardous

substances that occur during or after the performance of response

activities required by this Decree or any other violations of state or

federal law for which Defendant has not received a covenant not to sue.

(i)     Any issue addressed in MCL 324.20132 as it relates to

unknown conditions at or emanating from the Property.

(j)     Enforcement of Defendant's obligations under a

Postclosure Agreement entered into in connection with an MDEQ-

approved NFA Report.

19.2  The State reserves the right to take action against the

Defendant if it discovers at any time that any material information

provided by the Defendant prior to or after entry of this Decree was false or misleading.

19.3   The MDEQ and the MDAG expressly reserve all of their rights and defenses pursuant to any available legal authority to enforce this Decree.

19.4   In addition to, and not as a limitation of any other provision of this Decree, the MDEQ retains all of its authority and reserves all of its rights to perform, or contract to have performed, any response activities that the MDEQ determines are necessary.

19.5   In addition to, and not as a limitation of any provision of this Decree, the MDEQ and the MDAG retain all of their information-gathering, inspection, access and enforcement authorities and rights under Part 201 and any other applicable statute or regulation.

19.6   Failure by the MDEQ or the MDAG to enforce any term, condition, or requirement of this Decree in a timely manner shall not:

(a)   Provide or be construed to provide a defense for the Defendant's noncompliance with any such term, condition, or requirement of this Decree.

(b)    Estop or limit the authority of the MDEQ or the MDAG to enforce any such term, condition, or requirement of the Decree, or to seek any other remedy provided by law.

19.7  This Decree does not constitute a warranty or representation of any kind by the MDEQ that the response activities performed by the Defendant in accordance with the MDEQ-approved Response Activity Plans required by this Decree will result in the achievement of the performance objectives stated in Paragraph 6.1 of Section VI (Performance of Response Activities) of this Decree or the remedial criteria established by law, or that those response activities will assure protection of public health, safety, or welfare, or the environment.

19.8  Except as provided in Paragraph 18.1(a) of Section XVIII (Covenants Not to Sue by the State), nothing in this Decree shall limit the power and authority of the MDEQ or the State of Michigan, pursuant to Section 20132(8) of the NREPA, to direct or order all appropriate action to protect the public health, safety, or welfare, or the environment; or to prevent, abate, or minimize a release or threatened release of hazardous substances, pollutants, or contaminants on, at, or from the AOC.

## XX.  COVENANT NOT TO SUE BY THE DEFENDANT

20.1  The Defendant hereby covenants not to sue or to take any civil, judicial, or administrative action against the State, its agencies, or their authorized representatives, for any claims or causes of action against the State that arise from this Decree, including, but not limited to, any direct or indirect claim for reimbursement from the Cleanup and Redevelopment Fund pursuant to Section 20119(5) of the NREPA or any other provision of law.

20.2  After the Effective Date of this Decree, if the MDAG initiates any administrative or judicial proceeding for injunctive relief, recovery of response activity costs, or other appropriate relief relating to the AOC, the Defendant agrees not to assert and shall not maintain any defenses or claims that are based upon the principles of waiver, *res judicata*, collateral estoppel, issue preclusion, or claim-splitting, or that are based upon a defense that contends any claims raised by the MDEQ or the MDAG in such a proceeding were or should have been brought in this case; provided, however, that nothing in this paragraph affects the enforceability of the covenants not to sue set forth in Section XVIII (Covenants Not to Sue by the State) of this Decree.

78

## XXI.  CONTRIBUTION

Pursuant to Section 20129(5) of the NREPA and Section 113(f)(2) of the Comprehensive Environmental Response, Compensation, and Liability Act, 1980 PL 96-510, as amended (CERCLA), 42 USC 9613(f)(2); and to the extent provided in Section XVIII (Covenants Not to Sue by the State) of this Decree, the Defendant shall not be liable for claims for contribution for the matters set forth in Paragraph 18.1 of Section XVIII (Covenants Not to Sue by the State) of this Decree, to the extent allowable by law.  The parties agree that entry of this Decree constitutes a judicially approved settlement for purposes of Section 113(f)(3)(B) of CERCLA, 42 USC 9613(f)(3)(B), pursuant to which Defendant has, as of the Effective Date, resolved its liability to the MDEQ for the matters set forth in Paragraph 18.1 of this Decree.  Entry of this Decree does not discharge the liability of any other person that may be liable under Section 20126 of the NREPA, or Sections 107 and 113 of CERCLA, 42 USC 9607 and 9613.  Pursuant to Section 20129(9) of the NREPA, any action by Defendant for contribution from any person that is not a Party to this Decree shall be

subordinate to the rights of the State of Michigan if the State files an action pursuant to the NREPA or other applicable state or federal law.

## XXII.  MODIFICATIONS

22.1  The Parties may only modify this Decree according to the terms of this section. The modification of any Submission or schedule required by this Order may be made only upon written approval from the MDEQ.

22.2  Modification of any other provision of this Decree shall be made only by written agreement between the Defendant's Project Manager, the RRD Director, or his or her authorized representative, and the designated representative of the MDAG, and shall be entered with the Court.

## XXIII.  TERMINATION OF CERTAIN PROVISIONS

If Defendant obtains one or more MDEQ-approved NFA Reports pursuant to Section 20114d of the NREPA covering the entire AOC or when response activities by Defendant are no longer required at the AOC pursuant to this Decree, Defendant may petition the State to terminate this Decree.  Some approved NFA Reports may include

monitoring, operation and maintenance, or oversight necessary to assure the effectiveness and integrity of remedial action; these requirements will be encompassed in a Postclosure Agreement between the Parties in accordance with Section 20114d of the NREPA. Any response activities required in the Postclosure Agreement necessary to maintain compliance with Part 201 are separate and distinct from this Decree and are enforceable under the Postclosure Agreement, not under this Decree. Upon MDEQ concurrence, which shall not be unreasonably withheld or delayed, that one or more MDEQ-approved NFA Reports cover the entire AOC or response activities by Defendants are no longer required at the AOC, and that MDEQ has received all payments required to be made under this Decree, all obligations under Section VI (Performance of Response Activities), Section VII (Access), Section VIII (Sampling and Analysis), Section IX (Emergency Response), Section XII (Project Coordinators and Communications/Notices), Section XIII (Submissions and Approvals), Section XIV (Reimbursement of Costs), Section XV (Stipulated Penalties), and Paragraph 17.7 are terminated.

## XXIV.  SEPARATE DOCUMENTS

The Parties may execute this Decree in duplicate original form for the primary purpose of obtaining multiple signatures, each of which shall be deemed an original, but all of which together shall constitute the same instrument.

## XXV.  FINAL JUDGMENT

25.1  This Decree and its attachments constitute the final, complete, and exclusive agreement and understanding among the Parties regarding the settlement embodied in the Decree.  The Parties acknowledge that there are no representations, agreements, or understandings relating to the settlement other than those expressly contained in this Decree.

25.2  Upon entry of this Decree by the Court, this Decree shall constitute a final judgment between and among the Parties.  The Court enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

SO ORDERED THIS __ DAY OF _____, 2017.


_____
United States District Judge

82

FOR THE MICHIGAN DEPARTMENT OF ENVIRONMENTAL
QUALITY:

Dated _____7/21/2017_____

C. Heidi Grether, Director
Michigan Department of Environmental Quality
P.O. Box 30473
Lansing, MI 48909-7973
Phone: 517-284-6700


MICHIGAN DEPARTMENT OF ATTORNEY GENERAL

Dated  7-21-17

Polly A. Synk (P63473)
Brian J. Negele (P41846)
Assistant Attorneys General
Environment, Natural Resources,
  and Agriculture Division
6th Floor G. Mennen Williams Bldg.
525 West Ottawa Street
Lansing, MI 48933
517-373-7540

83

FOR THE FORD MOTOR COMPANY:


_____          Dated ___July 21, 2017___
Corey M. MacGillivray, Assistant Secretary
1 American Rd., Suite 1037
Dearborn, MI 48126


_____          Dated ___July 21, 2017___
Timothy A. Green (P42920)
Attorney for Defendant
Office of the General Counsel
Room 431-A3
One American Road
Dearborn, MI 48126-2701
*313- 390-1875*